Robie, Acting P. J.
*1133 In this domestic abuse case, defendant Jose Alberto Valdivia challenges a condition of his probation authorizing the warrantless search of electronic storage devices, such as cellular phones and computers, under his control.[1] He contends the condition must be stricken because it: (1) "is unreasonable under [ People v. ] Lent [ (1975) 15 Cal.3d 481, 124 Cal.Rptr. 905, 541 P.2d 545 ], as it bears no relationship to [his] current offense or potential future criminality"; and (2) "is unconstitutional under the Fourth and Fifth Amendments of the United States Constitution because [his] privacy and privilege against self[-] incrimination far outweigh the State's purported and unproven rehabilitation and societal protection interests." He also contends the condition infringes on the privacy interests of third parties.
We find no merit in defendant's arguments that the electronic storage device search condition is unreasonable under Lent , nor do we find any merit in his argument that the condition is unconstitutional under the Fifth Amendment. Furthermore, we conclude that his attempt to raise the privacy interests of third parties is barred by forfeiture. We do agree with him, however, that on the facts of this case, the electronic storage device search condition is unconstitutionally overbroad because its potential impact on his Fourth Amendment rights exceeds what is reasonably necessary to serve the government's legitimate interest in ensuring that he complies with the terms of his probation. Accordingly, we will strike the electronic storage device search condition but will also remand the case to the trial court to consider in the first instance whether the condition can be narrowed in a manner that will allow it to pass constitutional muster.
FACTUAL AND PROCEDURAL BACKGROUND
In June 2016, defendant physically assaulted his wife, leaving her with abrasions on her neck, bruises on her cheek, a swollen forearm, and small *1134 lacerations on her knee and head. He was charged with one count of inflicting corporal injury on a spouse. The case was resolved by a negotiated plea under which defendant pled no contest to the charge in exchange for a grant of probation and 90 days in jail.
On the day of the hearing when defendant changed his plea, the People filed a 23-page boilerplate memorandum of points and authorities, accompanied by a 12-page declaration from a Sacramento County *184 Sheriff's deputy assigned to the Sacramento Valley Hi-Tech Crimes Task Force, in support of the imposition of a probation condition requiring defendant to submit his electronic storage devices, including but not limited to cell phones and computers, to warrantless search and seizure. The boilerplate memorandum explained that the superior court had "developed new language describing search and seizure terms and conditions accompanying grants of probation for certain cases." Essentially, the new language added "electronic storage devices" to the standard condition permitting warrantless probation searches, which already permitted searches of a probationer's "person, place, property, automobile, ... and any object under [the probationer's] control."[2] According to the memorandum, the probation department was "recommending the imposition of this new language in cases, such as this, where there is a nexus between the grant of probation and the defendant's use of an electronic device." Being a boilerplate document, however, the memorandum did not provide any details relating to this specific case. Instead, the memorandum asserted in a footnote that the new search condition "should be imposed in cases where there has been a demonstrated connection between the type of criminal conduct involved and the use of electronic devices and/or [where the condition] bears a reasonable relation to future criminality, such as the following: drug sales/transportation; fraud, identity theft, financial crimes; sex offenses; human trafficking, pimping and pandering; domestic violence ; weapons-related offenses; gang enhancements and gang membership; and any other case where a defendant used an electronic device during the current offense or in a previous crime." (Italics added.)
The accompanying declaration explained how evidence of additional criminal activity (in the officer's training and experience) tended to be found on the electronic devices of those who had engaged in the various types of criminal conduct identified above. With respect to crimes of domestic violence, the officer asserted that the perpetrators of those crimes "often violate restraining orders, protective orders, or no[-] contact orders which ha[ve] been issued post-offense" and "[e]vidence of these violations is often found on electronic devices." The officer explained that such evidence could include *1135 actual communications with the protected party "via text, chat, or email," or "[g]eolocation data" that could "provide evidence that the suspect's device was near the victim['s] location in violation of an order." The officer further asserted that "[p]hotographic images, videos, or voice recording communications" could violate such orders, and evidence of those items might be found on the perpetrator's electronic device.
In a section applicable generally to all of the previously identified categories of crimes, the officer also purported to explain the need to examine the "[e]ntire [c]ontents of [e]lectronic devices." (Bold text omitted.) According to the officer, "it is necessary to search all the content contained on the device in some shape or form in order to identify ownership, possession, and activity related to the specific offense."
The same day the People filed the boilerplate memorandum and accompanying declaration supporting imposition of the electronic storage device search condition, defense counsel filed a boilerplate memorandum *185 objecting to the imposition of that condition. Defense counsel's memorandum asserted that a condition allowing the search of electronic storage devices was too intrusive to be imposed, and even if it was not, such a condition would be constitutionally overbroad. The memorandum also asserted that compelling someone to reveal the password for their computer would violate the Fifth Amendment.
At the hearing, after defense counsel stipulated to the factual basis for defendant's no contest plea, counsel objected to the proposed electronic storage device search condition "as without a nexus to the particular facts of this case, as well as being overbroad." Defense counsel further asserted that if the court was going to "impose a search condition on cell phones," "that condition should be limited only to material on that phone which would have a nexus to the charge."
The prosecutor responded that the People were seeking imposition of the electronic storage device search condition "particularly because this is a domestic violence case." The prosecutor pointed out that a protective order was going to be issued in the case and then argued (consistent with the declaration from the sheriff's deputy) that evidence of the violation of such orders is often found on electronic devices.
The court imposed the condition "as stated," i.e., without modification. Thus, the probation conditions imposed on defendant included the following: "Defendant shall submit his/her person, place, property, automobile, electronic storage devices, and any object under his/her control, including but not limited to cell phones and computers, to search and seizure by any law *1136 enforcement officer or probation officer, any time of the day or night, with or without a warrant, with or without his/her presence or further consent. [¶] ... [¶] Defendant shall provide access to any electronic storage devices and data contained there, including disclosing and providing any and all information necessary to conduct a search." Defendant was also ordered as a condition of probation to "[o]bey all laws applicable to [him]." And the court ordered, as a condition of probation, that defendant have only peaceful contact with the victim (his wife). To that end, the court issued a criminal protective order, effective during the probationary period, that did not prohibit defendant from having contact with his wife but did prohibit him from (among other things) harassing, striking, threatening, assaulting, following, stalking, and molesting her.
Defendant timely appealed from the order granting probation.
DISCUSSION
On appeal, defendant offers four arguments as to why the electronic storage device search condition is unlawful. First, he contends the condition violates the test set forth in Lent . Second, he contends the condition is overbroad in violation of his constitutional rights under the Fourth Amendment. Third, he contends the condition infringes on the privacy interests of third parties. And fourth, he contends the condition violates his privilege against self-incrimination under the Fifth Amendment. We address each argument in turn, albeit in a different order than presented by defendant.
I
The Lent Test
" 'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation. [Citations.] The sentencing court has broad discretion to determine whether an *186 eligible defendant is suitable for probation and, if so, under what conditions. [Citations.] The primary goal of probation is to ensure "[t]he safety of the public ... through the enforcement of court-ordered conditions of probation." [Citation.]' [Citation.] Accordingly, the Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer. ...' [Citation.] Although the trial court's discretion is broad in this regard, we have held that a condition of probation must serve a *1137 purpose specified in Penal Code section 1203.1. [Citations.] If a defendant believes the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence." ( People v. Olguin (2008) 45 Cal.4th 375, 379, 87 Cal.Rptr.3d 199, 198 P.3d 1 ( Olguin ).)
Like the Supreme Court, "[w]e review conditions of probation for abuse of discretion." ( Olguin , supra , 45 Cal.4th at p. 379, 87 Cal.Rptr.3d 199, 198 P.3d 1.) Under the test from Lent , "[g]enerally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. ..." [Citation.]' [Citation.] This test is conjunctive-all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." ( Olguin , at pp. 379-380, 87 Cal.Rptr.3d 199, 198 P.3d 1, quoting People v. Lent , supra , 15 Cal.3d at p. 486, 124 Cal.Rptr. 905, 541 P.2d 545.)
Pursuant to the foregoing, the initial question here under Lent is whether the electronic storage device search condition is reasonably related to preventing future criminality by defendant. Defendant asserts it is not. He contends that to the extent the prosecutor argued the condition was justified because evidence of the violation of no-contact protective orders is often found on electronic storage devices, "[t]he entire basis for allowing a warrantless search of all electronic devices under [his] control is nonexistent" because the trial court did not issue any such order in this case, but instead issued only a "peaceful contact" protective order. According to defendant, "[p]robation conditions are to be tailored on a case specific basis, and the search condition in light of the facts of this case is completely illogical." To that same end, he contends that because "there is nothing in the record regarding the current offense or [his] social history that connects his use of electronic devices or social media to domestic violence," "the record is wholly silent about [his] usage of electronic devices or social media," and "nothing in [his] current offense or his personal history demonstrates a predisposition to utilize electronic devices or social media in connection with criminal activity," "there is no reason to believe that the current probation condition will serve a rehabilitative function as precluding [him] from any future criminal acts of violence against his wife."
We are not persuaded. The principle underlying defendant's argument is that for a probation condition to be reasonably related to preventing future criminality, *187 that condition must have a specific connection to the facts of the *1138 defendant's offense of conviction or other past criminal conduct and must have a tendency to preclude the defendant from engaging in similar criminal conduct in the future. Case law from our Supreme Court does not support that principle, however. Not that long ago, in Olguin , a majority of the Supreme Court held that a condition of probation is reasonably related to future criminality if it "enables a probation officer to supervise his or her charges effectively." ( Olguin , supra , 45 Cal.4th at pp. 380-381, 87 Cal.Rptr.3d 199, 198 P.3d 1.) While the specific condition at issue in Olguin was one "requiring notification of the presence of pets" ( id . at p. 381, 87 Cal.Rptr.3d 199, 198 P.3d 1 ), the Olguin majority pointed out, as an example, that "probation conditions authorizing searches 'aid in deterring further offenses ... and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.' " ( Id. at p. 380, 87 Cal.Rptr.3d 199, 198 P.3d 1, quoting People v. Robles (2000) 23 Cal.4th 789, 795, 97 Cal.Rptr.2d 914, 3 P.3d 311.) The Supreme Court also cited with approval the decision in People v. Balestra (1999) 76 Cal.App.4th 57, 90 Cal.Rptr.2d 77 (see Olguin , at p. 381, 87 Cal.Rptr.3d 199, 198 P.3d 1 ), where the appellate court held that "a warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement ... that a probationer 'obey all laws.' Thus, warrantless search conditions serve a valid rehabilitative purpose, and ... such a search condition is necessarily justified by its rehabilitative purpose." ( Balestra , at p. 67, 90 Cal.Rptr.2d 77.) And as long ago as 1971, our Supreme Court explained that the "acknowledged purposes" of a search condition are "to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation. ... 'The purpose of an unexpected, unprovoked search of [the] defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.' " ( People v. Mason (1971) 5 Cal.3d 759, 763-764, 97 Cal.Rptr. 302, 488 P.2d 630, disapproved on other grounds in People v. Lent , supra , 15 Cal.3d at p. 486, fn. 1, 124 Cal.Rptr. 905, 541 P.2d 545, quoting People v. Kern (1968) 264 Cal.App.2d 962, 965, 71 Cal.Rptr. 105.)
Like most, if not all, probationers, defendant here was ordered as a condition of probation to "[o]bey all laws applicable to [him]." Given this condition, the fact that defendant may not have shown any predisposition to use an electronic storage device like a cell phone or computer for purposes of criminal activity, including but not limited to crimes of domestic violence, does not render the electronic storage device search condition unreasonable under Lent . The electronic storage device search condition-like the rest of the search conditions (to which defendant did not object)-serves to enable *1139 defendant's probation officer to supervise him effectively by helping the probation officer ensure that defendant is complying with the conditions of his probation by obeying all laws, not just the law he previously disobeyed when he assaulted *188 his wife. Because the electronic storage device search condition serves this valid rehabilitative purpose, it is reasonably related to future criminality and thus satisfies the Lent test.[3]
II
Privacy Rights Of Third Parties
Defendant contends that because the electronic storage device search condition "allow[s] for searches outside of [his] immediate control (i.e., computers or electronic devices he may leave at work or with a friend or relative, or computers or devices he might share with coworkers, family members, or roommates)," because his wife and her children "continue to reside in the same home as [defendant], and potentially use the same electronic storage devices as him," and because "as a parent, he technically has control over his minor children's electronic storage devices," the condition here "is overbroad and infringes on not only [his] but his entire family's privacy rights" and thus "must be stricken."
We conclude defendant forfeited this argument by failing to raise it in the trial court, and thus we do not address it further. (See, e.g., People v. Trujillo (2015) 60 Cal.4th 850, 856, 182 Cal.Rptr.3d 143, 340 P.3d 371.)[4]
III
Fifth Amendment Privilege Against Self-Incrimination
Defendant contends that because the electronic storage device search condition implicitly requires him to "provide needed usernames, passwords, *1140 etcetera" to facilitate searches of his devices,[5] "[t]he condition ... is tantamount to mandating testimony by [him] of his knowledge of the existence and locations of certain personal texts, email and social media accounts, as well as his possession, control, and access to those accounts." In this manner, he contends, the condition requires him "to provide a testimonial or communicative act." He further asserts that those acts "could well be accompanied by implied factual statements that could prove to be incriminatory." Because the refusal "to provide personally incriminating and testimonial acts" "would lead to revocation of [his] probation," defendant contends the search condition effectively compels him to provide communicative acts and thus violates his rights under the Fifth Amendment.
The shortest answer to this argument is that even assuming the provision requiring defendant to "disclos[e] and provid[e] any and all information necessary to conduct a search" of electronic storage devices in his control can be reasonably understood as compelling him to incriminate himself in *189 violation of his Fifth Amendment privilege, defendant has offered no authority for the proposition that the provision must be stricken. He places some reliance on the United States Supreme Court's decision in Minnesota v. Murphy (1984) 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409, but that reliance is misplaced.
In Minnesota , the Court addressed "whether a statement made by a probationer to his probation officer without prior [Miranda ] warnings is admissible in a subsequent criminal proceeding." ( Minnesota v. Murphy , supra , 465 U.S. at p. 425, 104 S.Ct. 1136, 79 L.Ed.2d at p. 418.) In the course of answering that question, the Court noted that "if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, ... the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." ( Id. at p. 435, 104 S.Ct. at p. 1146, 79 L.Ed.2d at pp. 424-425 ].) In an accompanying footnote, the Court further asserted that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' [citations], and nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as 'one of a number of *1141 factors to be considered by a finder of fact' in deciding whether other conditions of probation have been violated." ( Id. at p. 435, fn. 7, 104 S.Ct. at p. 1146, fn.7, 79 L.Ed.2d at p. 425, fn. 7 ].)
The foregoing principles from Minnesota do not support defendant's assertion that the probation condition requiring him to disclose and provide any and all information necessary to conduct a search of electronic storage devices in his control must be stricken as violative of his Fifth Amendment privilege against self-incrimination. Rather, at best, assuming (without deciding) that the condition can be reasonably understood as compelling him to incriminate himself in violation of his privilege, and assuming (without deciding) that the condition is sufficient by itself to communicate that a refusal to disclose and provide such information will lead to the revocation of probation, all Minnesota says is that when (if ever) defendant is asked to disclose and provide such information, he does not have to expressly assert the privilege, the failure to assert the privilege will be excused, and any answers he provides may be deemed compelled and inadmissible in a criminal prosecution. At the same time, however, if defendant refuses to disclose and provide such information, he may be in violation of the terms of his probation and the state can revoke his probation on that basis. Nothing in Minnesota supports defendant's contention that the mere existence of the condition requiring him to disclose and provide any and all information necessary to conduct a search of electronic storage devices in his control presently violates his Fifth Amendment privilege against self-incrimination such that the condition cannot lawfully exist and must be stricken. For this reason, defendant's challenge to the condition under the Fifth Amendment is without merit.
IV
Overbreadth
Defendant's final challenge to the electronic storage device search condition *190 is that it is overbroad in violation of his constitutional rights under the Fourth Amendment. Thus, the question we are left with is this: Does an electronic storage device search condition that passes muster under Lent because it reasonably relates to future criminality by allowing defendant's probation officer to search such devices within defendant's control to ensure he is obeying all laws also pass muster under the Fourth Amendment? On the facts here, we conclude the answer to that question is "no."
"A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." ( *1142 In re Sheena K. (2007) 40 Cal.4th 875, 890, 55 Cal.Rptr.3d 716, 153 P.3d 282.) "Conditions which infringe on constitutional rights are not automatically invalid. Certain intrusions by government which would be invalid under traditional constitutional concepts may be reasonable at least to the extent that such intrusions are required by legitimate governmental demands." ( In re White (1979) 97 Cal.App.3d 141, 149-150, 158 Cal.Rptr. 562.) A probation condition "is unconstitutionally overbroad ... if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' " ( In re E.O. (2010) 188 Cal.App.4th 1149, 1153, 115 Cal.Rptr.3d 869, quoting In re Victor L. (2010) 182 Cal.App.4th 902, 910, 106 Cal.Rptr.3d 584.)
There is no doubt that the electronic storage device search condition imposed on defendant here impinges on his constitutional rights under the Fourth Amendment. In Riley v. California (2014) --- U.S. ----, 134 S.Ct. 2473, 189 L.Ed.2d 430, the United States Supreme Court held that the police generally may not, without a warrant, search digital information on a cell phone (one type of electronic storage device) incident to an arrest. In reaching that conclusion, the Court explained how "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of" "other objects that might be kept on an arrestee's person," such as "a cigarette pack, a wallet, or a purse." ( Id. at p. ----, 134 S.Ct. at p. 2489, 189 L.Ed.2d at p. 446 ].) Detailing how the search of a cell phone can impact a person's privacy interests, the Court wrote as follows: "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.
"One of the most notable distinguishing features of modern cell phones is their immense storage capacity. ...
"[T]he current top-selling smart phone has a standard capacity of 16 gigabytes (and is available with up to 64 gigabytes). Sixteen gigabytes translates to millions of pages of text, thousands of pictures, or hundreds of videos. [Citation.] Cell phones couple that capacity with the ability to store many different types of information: Even the most basic phones that sell for less than $20 might hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on. [Citation.] We expect that the gulf between physical practicability and digital capacity will only continue to widen in the future.
"The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of *1143 information-an address, a note, a prescription, a bank *191 statement, a video-that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.
"Finally, there is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception. According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower. [Citation.] A decade ago police officers searching an arrestee might have occasionally stumbled across a highly personal item such as a diary. [Citation.] But those discoveries were likely to be few and far between. Today, by contrast, it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives-from the mundane to the intimate. ...
"Although the data stored on a cell phone is distinguished from physical records by quantity alone, certain types of data are also qualitatively different. An Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns-perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD. Data on a cell phone can also reveal where a person has been. Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building. [Citation.]
"Mobile application software on a cell phone, or 'apps,' offer a range of tools for managing detailed information about all aspects of a person's life. There are apps for Democratic Party news and Republican Party news; apps for alcohol, drug, and gambling addictions; apps for sharing prayer requests; apps for tracking pregnancy symptoms; apps for planning your budget; apps for every conceivable hobby or pastime; apps for improving your romantic life. There are popular apps for buying or selling just about anything, and the records of such transactions may be accessible on the phone indefinitely.
*1144 There are over a million apps available in each of the two major app stores; the phrase 'there's an app for that' is now part of the popular lexicon. The average smart phone user has installed 33 apps, which together can form a revealing montage of the user's life. [Citation.]
"In 1926, Learned Hand observed ... that it is 'a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him.' [Citation.] If his pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form *192 many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form-unless the phone is.
"To further complicate the scope of the privacy interests at stake, the data a user views on many modern cell phones may not in fact be stored on the device itself. Treating a cell phone as a container whose contents may be searched incident to an arrest is a bit strained as an initial matter. [Citation.] But the analogy crumbles entirely when a cell phone is used to access data located elsewhere, at the tap of a screen. That is what cell phones, with increasing frequency, are designed to do by taking advantage of 'cloud computing.' Cloud computing is the capacity of Internet-connected devices to display data stored on remote servers rather than on the device itself. Cell phone users often may not know whether particular information is stored on the device or in the cloud, and it generally makes little difference. [Citation.] Moreover, the same type of data may be stored locally on the device for one user and in the cloud for another." ( Riley v. California , supra , --- U.S. ----, 134 S.Ct. at p. 2491, 189 L.Ed.2d at pp. 446-449, fn. omitted.)
From the United States Supreme Court's observations in Riley , it is abundantly clear that a probation condition that authorizes the warrantless search of an electronic storage device like a cell phone carries the potential for a significant intrusion into defendant's private affairs-even more so than the standard condition authorizing the search of defendant's "person, place, property, automobile, ... and any object under [defendant's] control." As the appellate court observed in People v. Appleton (2016) 245 Cal.App.4th 717, 199 Cal.Rptr.3d 637 ( Appleton ), "the computer search condition at issue here arguably sweeps more broadly than the standard three-way search condition allowing for searches of probationers' persons, vehicles, and homes. First, by allowing warrantless searches of all of defendant's computers and electronic devices, the condition allows for searches of items outside his home or vehicle, or devices not in his custody-e.g., computers or devices he may leave at work or with a friend or relative. Second, the scope *1145 of a digital search is extremely wide. ... Thus, a search of defendant's mobile electronic devices could potentially expose a large volume of documents or data, much of which may have nothing to do with illegal activity. These could include, for example, medical records, financial records, personal diaries, and intimate correspondence with family and friends." ( Id. at p. 725, 199 Cal.Rptr.3d 637.)
Given the potential for an essentially unprecedented intrusion into private affairs that may-and likely will-have nothing to do with illegal activity, the question is whether such an intrusion is nonetheless constitutionally permissible because it is tailored carefully to the government's legitimate interest in defendant's reformation and rehabilitation. We conclude it is not.
It goes without saying that the state has a legitimate and significant interest in ensuring that the purpose of probation-defendant's rehabilitation-is achieved here. (See People v. Wardlow (1991) 227 Cal.App.3d 360, 365, 278 Cal.Rptr. 1 ["The purpose of probation is rehabilitation"].) Moreover, as we have concluded already in upholding the electronic storage device search condition under Lent , a search condition that permits warrantless searches of electronic storage devices under defendant's control for evidence of criminal activity can be understood to serve that purpose by helping to ensure that defendant is obeying all laws, which another condition of his probation requires him to do. But at *193 the same time the electronic storage device search condition serves the state's legitimate interest in monitoring defendant's rehabilitation, it permits unprecedented intrusion into his private affairs-and it does so on a record that demonstrates little likelihood, or even possibility, that evidence of illegal activity will be found in the devices the condition subjects to a warrantless search.
As defendant points out, "the record does not show that electronic devices played any role in the underlying criminal conduct"-that is, defendant's infliction of corporal injury on his wife. Moreover, there was nothing in the record to demonstrate that defendant "use[d] electronic devices for wrongful purposes in the past." Essentially, the record here showed only that defendant physically assaulted his wife on a single occasion. And it is significant that the People did not seek, nor did the trial court issue, a protective order prohibiting defendant from having contact with his wife. Rather, defendant was subjected only to a peaceful contact order-meaning he can still lawfully reside with his wife and interact with her on a daily basis, as long as he does so peacefully. Under these circumstances, there appears to be no substantial reason for believing that evidence of future criminal activity by defendant is likely to be found on electronic storage devices under his control.
In their attempt to justify imposition of the electronic storage device search condition on defendant, the People first contend that "because [he] has *1146 pleaded no contest to a felony and accepted probation in lieu of additional punishment, [defendant] has a diminished expectation of privacy as compared to law-abiding citizens or those subject to searches incident to arrest." This is undoubtedly true, but at the same time defendant did not entirely surrender his rights under the Fourth Amendment by pleading no contest and accepting probation. The fact that the overbreadth doctrine applies at all to probationers like defendant illustrates this point. A probation condition that infringes on the constitutional rights a probationer otherwise enjoys still must be closely tailored to achieve the legitimate purpose or purposes of that condition. The fact that a person convicted of a felony has agreed to subject himself to the supervision of probation does not, by itself, give the government the right to dig through every aspect of that person's private affairs in search of evidence of criminal activity without any explanation or justification from the government of why such a search has, at the very least, a reasonable possibility of actually uncovering such evidence.
In attempting to suggest that such a possibility was shown here, the People argue essentially that the electronic storage device search condition was justified because defendant was convicted of a crime of domestic violence, and the evidence before the trial court (in the form of the stock declaration from the sheriff's deputy) showed that "in domestic violence related crimes, offenders often violate criminal protective orders like the one issued against [defendant] by threatening their victims via various electronic devices."
We find this argument unpersuasive for two reasons. First, the evidence presented to the trial court was not specific to peaceful contact protective orders like the one the court issued here. As we have explained, the sheriff's deputy whose declaration was offered to justify imposition of the electronic storage device search condition attested only generally that the perpetrators of domestic violence crimes "often violate restraining orders, protective orders, or no[-]contact orders which ha[ve] been issued post-offense," and "[e]vidence of these violations is often found on electronic *194 devices" in the form of actual communications with the protected party "via text, chat, or email," or "[g]eolocation data" that could "provide evidence that the suspect's device was near the victim['s] location in violation of an order." The deputy further asserted that "[p]hotographic images, videos, or voice recording communications" could violate such orders, and evidence of those items might be found on the perpetrator's electronic device.
Whatever the validity of the deputy's observations might be in cases involving no-contact protective orders, there appears little, if any, substantial basis for finding a reasonable possibility that evidence of a violation of the peaceful contact order imposed here would be found on an electronic storage device under defendant's control. As defendant himself observes, "[a]nything *1147 violent or abusive [he] would potentially convey to the victim through text, Instagram or Snapchat, he could convey much more easily in the flesh." As a matter of pure logic, just because defendant physically assaulted his wife does not make it any more likely that evidence of future behavior toward her in violation of the peaceful contact order would be found on a cell phone or computer under his control. And as a matter of experience -particularly the experience of the sheriff's deputy whose stock declaration was offered in support of the electronic storage device search condition-there is simply no adequate evidentiary basis for concluding that evidence of a violation of a peaceful contact order is likely to be found on an electronic storage device under defendant's control, especially when the deputy's testimony addressed in an undifferentiated manner all types of protective orders, including no-contact orders, and that testimony was not in any way tailored to defendant or his circumstances.
The second reason we reject the People's attempt to justify imposition of the electronic storage device search condition on the basis that evidence of a violation of the peaceful contact order might be found in a search performed pursuant to that condition is that, in any event, the People's justification is too narrow to reasonably justify the breadth of the condition actually imposed. Essentially, the People's position breaks down to this: Because there is a possibility that evidence of contact between defendant and his wife that violates the peaceful contact order-e.g., contact that amounts to harassing, threatening, following, stalking, or molesting her-might be found on an electronic storage device under defendant's control, the warrantless search of such devices without any limitation whatsoever is justifiable and not overbroad under the Fourth Amendment. On the record before us, however, we cannot agree with that position. As set forth above, Riley details the staggering amount of personal information that can be found on a typical cell phone, and Appleton reinforces that point. We cannot say that it is reasonable to allow law enforcement officials to cull through all such information on defendant's devices, without limitation, because of the remote possibility that somewhere in that information evidence of a nonpeaceful contact between defendant and his wife may be found.
For both of the foregoing reasons, we conclude that on the record in this case the electronic storage device search condition is unconstitutionally overbroad because its potential impact on defendant's Fourth Amendment rights exceeds what is reasonably necessary to serve the government's legitimate interest in ensuring that he complies with the terms of his probation. Whether the condition can, as a practical matter, be narrowed in a manner that will allow it to pass constitutional muster is a *195 matter we leave for the parties and the trial court to address in the first instance on remand. For now, it is sufficient for us to conclude that the imposition of the condition in its current form cannot be sustained based on the record presently before us. *1148 DISPOSITION
The order granting probation is modified by striking the probation condition requiring defendant to submit his "electronic storage devices, ... including but not limited to cell phones and computers, to the search and seizure by any law enforcement officer or probation officer, any time of the day or night, with or without warrant, with or without his/her presence or further consent," and to "provide access to any electronic storage devices and data contained there, including disclosing and providing any and all information necessary to conduct a search." As modified, the order is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion.
I concur:
Butz, J.
MURRAY, J.

For ease of reference, we will refer to this as the "electronic storage device search condition."

For ease of reference, we will refer to the search condition as a whole as the search condition and will refer to the provision referencing electronic storage devices as the electronic storage device search condition, even though the former is simply a part of the latter.

A similar question is pending review before the Supreme Court in In re Ricardo P.(2015) 241 Cal.App.4th 676, 193 Cal.Rptr.3d 883, review granted February 17, 2016, S230923.

On remand for consideration of whether the condition can be sufficiently narrowed to pass constitutional muster under the Fourth Amendment, defendant may attempt to raise a further challenge to the condition based on the privacy rights of third parties, and we express no opinion on the potential validity of such a challenge, other than to note that defendant may lack standing to assert the privacy rights of persons other than himself. (See B. C. Cotton, Inc. v. Voss(1995) 33 Cal.App.4th 929, 947-948, 39 Cal.Rptr.2d 484 ["courts will not consider issues tendered by a person whose rights and interests are not affected"].)

Actually, the condition expressly requires him to "provide access to any electronic storage devices and data contained there, including disclosing and providing any and all information necessary to conduct a search."