Filed 7/2/19

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C082729 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE011619) |
| v. | |
| CHRISTOPHER WRIGHT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Jack Sapunor, Judge.  Affirmed as modified.

Jin H. Kim, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Stephen G. Herndon, Supervising Deputy Attorney General, Matthew A. Kearney, Deputy Attorney General for Plaintiff and Respondent.

Defendant Christopher Wright admitted a felony violation of Penal Code section 530.5, subdivision (c)(3), acquiring personal identifying information with intent to

1

defraud, in relation to the possession of about 60 credit cards, driver's licenses, gift cards and Social Security cards in the names of other persons. (Statutory references that follow are to the Penal Code unless otherwise stated.) The trial court placed defendant on probation with various terms and conditions, including that defendant submit his electronic storage devices and e-mail/Internet accounts to search without a search warrant.

Defendant now contends (1) the electronic device search condition is invalid under *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*)[1]; (2) the electronic device search condition violates his right to privacy and is overbroad; (3) the electronic device search condition violates his privilege against self-incrimination; (4) the electronic device search condition violates the California Electronic Communications Privacy Act (§ 1546 et seq.); (5) the e-mail/Internet account search condition violates his right to privacy and his privilege against self-incrimination; (6) his counsel was ineffective in failing to object to the e-mail/Internet account search condition; (7) the urinalysis test fee is unauthorized and cannot be made a condition of probation; (8) the order granting probation must be modified to make clear that payment of the court facility fee is not a condition of probation; and (9) the criminal impact fee is unauthorized. Defendant withdrew his contention that certain probation conditions must be modified to include a scienter requirement.

We modify the order granting probation to strike the urinalysis testing fee and the criminal impact fee, and to provide that the court facility fee is not imposed as a condition of probation, but instead is imposed as an order of the trial court entered at judgment. We affirm the order granting probation as modified.

---

[1]     *Lent* was superseded by statute on another ground, as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-291.

## FACTS AND PROCEEDINGS

Defendant entered a plea of no contest to willfully and unlawfully acquiring and retaining the personal identifying information of 10 or more persons with intent to defraud. He waived referral to probation and requested immediate judgment and sentencing.

The People asked the trial court to impose an electronic device search condition to help the probation department monitor whether defendant was violating the law.

The People submitted the declaration of Detective Sean Smith in support of the request. Detective Smith was a member of the Sacramento Valley Hi Tech Crimes Task Force, an agency which investigated cyber crimes. Detective Smith averred, based on his training and experience, that persons who committed identity theft and fraud crimes commonly used electronic devices to research and purchase victim information and manufacture counterfeit credit cards, checks and identifications. The detective explained how electronic devices could be used to commit identity theft and fraud crimes. He said, for example, that cell phones were commonly used to photograph and store victim information, identify locations where the defendant intended to commit fraud, and deposit counterfeit checks into bank accounts. Detective Smith explained why it was necessary to search all content on a device and obtain password information in identity theft and fraud cases.

Defendant's trial counsel objected to the electronic device search condition because there was no indication a cell phone or electronic device was used in this case or that defendant manufactured the items found in his car, and defendant's only prior crime was for driving stolen cars. Defendant's trial counsel argued the electronic device search condition was not tailored to defendant or the current offense and was overbroad. He also argued the condition violated defendant's Fifth Amendment rights in that it required defendant to disclose passwords. Defendant's trial counsel pointed out that another

probation condition already required disclosure of e-mail/Internet accounts and access to computers, networks and passwords. Defendant's trial counsel did not object to the e-mail/Internet account search condition.

The trial court imposed the electronic device search condition over defendant's objection. It said, "It does appear that computers, cell phones, other electronic devices are extremely useful in violating this code section. One can violate it by possessing these things and also the manufacture of these things or the negotiation of various instruments can be facilitated through the use of these electronic devices. So I think there is a nexus here in this case, given the offense."

The trial court suspended imposition of sentence and placed defendant on formal probation for five years. It imposed 19 specific conditions of probation including a general search condition which provided, "Defendant shall submit his person, property and automobile and any object under [his] control to search and seizure in or out of . . . [his] presence . . . , by any law enforcement officer and/or probation officer, at any time of the day or night, with or without his consent, with or without a warrant."

The trial court also imposed an electronic device search condition as follows: "P.C. 1546 searchable - Defendant shall submit his . . . person, place, property, automobile, electronic storage devices, and any object under his . . . control, including but not limited to cell phone and computers, to search and seizure by any law enforcement officer or probation officer, any time of the day or night, with or without a warrant, with or without his . . . presence or further consent. [¶] Defendant being advised of his . . . constitutional and statutory rights pursuant to Penal Code section 1546 et seq. in this regard, and having accepted probation, is deemed to have waived same and also specifically consented to searches of his . . . electronic storage devices. [¶] Defendant shall provide access to any electronic storage devices and data contained therein, including disclosing and providing any and all information necessary to conduct a search."

4

In addition, the trial court imposed an e-mail/Internet account search condition: "Defendant shall disclose all email accounts, all internet accounts and any other means of access to any computer or computer network, all passwords and access codes. Defendant shall consent to the search of such email and internet accounts at any time and for the seizure of any information without a search warrant or probable cause."

Defendant was also prohibited from possessing, controlling or using a personal checking account, unless authorized by his probation officer; possessing personal identifying information of another person, as defined in section 530.5, without prior approval of the probation department; possessing an access card, as defined in section 484d, subdivision (2), in the name of another without prior approval of the probation department; possessing software designed for manufacturing checks or blank check paper; knowingly possessing a scanner; possessing an access card reader or encoder; intentionally concealing the source, destination or content of any electronic communication transmitted or otherwise sent by defendant; providing false information about his identity to an electronic communications service provider, as defined in section 2510(15) of title 18 of the United States Code, when purchasing or agreeing to purchase any service from that provider which allows defendant to send and receive electronic communications; and possessing any software and/or hardware designed to encrypt or decrypt computer files.

Defendant was further required to pay restitution, a restitution fine under section 1202.4, subdivision (b), a criminal impact fee pursuant to section 1465.7, subdivision (a), a urinalysis test fee, and a court facility fee pursuant to Government Code section 70373.

Defendant filed a brief opposing the electronic device search condition after the sentencing hearing. He asserted privacy, overbreadth, the Electronic Communications Privacy Act and his Fifth Amendment privilege against self-incrimination as the basis for his objection and asked the trial court to narrowly tailor the condition to fit the

5

government's purposes. The appellate record does not indicate whether a further hearing was requested or held based on defendant's written brief.

## DISCUSSION

### I

### *The Electronic Search Condition Is Not Invalid Under Lent*

Defendant claims the electronic device search condition is invalid under *Lent, supra,* 15 Cal.3d at page 486, because the condition is unrelated to his current offense, possession of electronic storage devices is lawful, and the condition is not reasonably related to his future criminality. We disagree.

A grant of probation is an act of clemency. (*People v. Moran* (2016) 1 Cal.5th 398, 402 (*Moran*).) Probation is a privilege, not a right. (*Ibid.*) When an offender chooses probation, thereby avoiding incarceration, the sentencing court may impose reasonable conditions of probation as it "may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) Section 1203.1 grants sentencing courts broad discretion to impose probation conditions to foster rehabilitation and protect public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)

" 'Generally, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" [Citation.] This test[, which the California Supreme Court adopted in *Lent*,] is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was

6

convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.' [Citation.]" (*Moran, supra*, 1 Cal.5th at p. 403.)

We review the validity of a probation condition under *Lent* for abuse of discretion. (*Moran, supra*, 1 Cal.5th at p. 403; *People v. Carbajal, supra*, 10 Cal.4th at p. 1121.) We will not disturb the trial court's decision to impose a particular condition of probation unless that choice is arbitrary and exceeds the bounds of reason, all of the circumstances being considered. (*Moran, supra*, 1 Cal.5th at p. 403; *People v. Anderson* (2010) 50 Cal.4th 19, 32.) As the party challenging the condition, defendant must clearly show that the condition is irrational or arbitrary. (*People v. Balestra* (1999) 76 Cal.App.4th 57, 63 (*Balestra*).) Absent such a showing, we presume the sentencing court " ' "acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." [Citation.] Concomitantly, "[a] decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.]" [Citation.]' " (*Ibid.*)

Addressing the first and second *Lent* factors, the Attorney General agrees there is no evidence an electronic device played a role in the current offense, and using an electronic device is not criminal. Turning to the third *Lent* factor, however, the Attorney General argues the electronic device search condition is reasonably related to preventing future criminality. We agree.

Probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' [Citation.] [¶] These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. [Citation.] These same goals require and justify the

7

exercise of supervision to assure that the restrictions are in fact observed." (*Griffin v. Wisconsin* (1987) 483 U.S. 868, 874-875 [97 L.Ed.2d 709, 718] (*Griffin*).)

In general, a probation search condition helps " 'deter further offenses by the probationer and to ascertain whether he [or she] is complying with the terms of . . . probation.' [Citation.]" (*People v. Bravo* (1987) 43 Cal.3d 600, 610 (*Bravo*); see *People v. Robles* (2000) 23 Cal.4th 789, 795 (*Robles*).) "By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers." (*Robles, supra*, 23 Cal.4th at p. 795.) A term of probation that facilitates effective supervision of a probationer is, therefore, reasonably related to deterring future criminality. (*People v. Olguin* (2008) 45 Cal.4th 375, 378, 380-381 (*Olguin*).)

In *Olguin*, the probationer had agreed to the warrantless search of his residence. The California Supreme Court there held that a condition requiring the probationer to notify his probation officer of the presence of pets at the probationer's residence was reasonably related to future criminality because the pet disclosure condition helped protect probation officers during compliance visits and facilitated unannounced searches of the probationer's residence, aimed at discovering whether the probationer was complying with the terms of his probation. (*Olguin, supra,* 45 Cal.4th at pp. 381-382.) Similarly, the appellate court in *Balestra* upheld a condition requiring the probationer to submit her person and property to search with or without probable cause, concluding that such condition served the rehabilitative purpose of helping a probation officer ensure that his or her charge was obeying all laws. (*Balestra, supra*, 76 Cal.App.4th at pp. 61, 64-68.) For that reason, the condition was reasonably related to future criminality. (*Ibid.*; see *Olguin, supra,* 45 Cal.4th at p. 381.) An electronic device search condition is likewise reasonably related to preventing a defendant's future criminality. (*People v. Valdivia* (2017) 16 Cal.App.5th 1130, 1137-1139, review granted Feb. 14, 2018, S245893 (*Valdivia*) [electronic device search condition was reasonably related to future

criminality because it helped the probation officer ensure that the defendant was complying with the conditions of his probation by obeying all laws]; *In re P.O.* (2016) 246 Cal.App.4th 288, 293-296 [electronic device search condition was reasonably related to future criminality because it enabled peace officers to review the probationer's electronic activity for indications that the probationer had drugs or was otherwise violating his probation].) [2]

Here, defendant admitted that he willfully, and with intent to defraud, acquired the personal identifying information of 10 or more persons. The trial court found that electronic devices would be extremely useful in manufacturing, obtaining and using the kinds of items found in defendant's possession. The trial court imposed other probation conditions aimed at deterring defendant's commission of identity theft crimes in the future. Defendant does not challenge those other terms of his probation. Searching defendant's cell phone, computers and other electronic storage devices would enable defendant's probation officer to ascertain whether defendant is complying with the other unchallenged conditions of defendant's probation.

---

[2]    The California Supreme Court granted review in a number of cases challenging electronic device search conditions. The lead case is *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17, 2016, S230923. Some of the cases now before the Supreme Court concluded, like *Valdivia*, an opinion from this court, that the electronic device search condition was reasonably related to future criminality. (*People v. Trujillo* (2017) 15 Cal.App.5th 574, 583, review granted Nov. 29, 2017, S244650 (*Trujillo*); *In re J.E.* (2016) 1 Cal.App.5th 795, 801-803, review granted Oct. 12, 2016, S236628; *In re George F.* (2016) 248 Cal.App.4th 734, 740-742, review granted Sept. 14, 2016, S236397; *In re A.S.* (2016) 245 Cal.App.4th 758, 770-772, review granted May 25, 2016, S233932; *In re Alejandro R.* (2015) 243 Cal.App.4th 556, 563-567, review granted Mar. 9, 2016, S232240; *In re Patrick F.* (2015) 242 Cal.App.4th 104, 109-111, review granted Feb. 17, 2016, S231428; *In re Ricardo P., supra,* 241 Cal.App.4th 676, review granted.) Others invalidated electronic device search conditions under the third *Lent* factor. (*People v. Bryant* (2017) 10 Cal.App.5th 396, 401-406, review granted June 28, 2017, S241937; *In re Mark C.* (2016) 244 Cal.App.4th 520, 532-535, review granted Apr. 13, 2016, S232849.)

While nothing in the record indicates that defendant used an electronic device to acquire, obtain, manufacture or use the credit cards, driver's licenses, gift cards, and Social Security cards found in his possession, the trial court's finding that electronic devices can facilitate the commission of identity theft crimes is not outside the bounds of reason. (*People v. Valenzuela* (2012) 205 Cal.App.4th 800, 803 [the defendant possessed credit card information, dates of birth, Social Security numbers, telephone numbers, and addresses for three people which he obtained from a Web site that advertised the sale of people's personal identifying information]; *People v. Love* (2008) 166 Cal.App.4th 1292, 1295-1296 [use of credit card information belonging to other people to make unauthorized online purchases]; *People v. Shabtay* (2006) 138 Cal.App.4th 1184, 1188-1189 [same].) Whatever the outer limits of *Olguin* may be, we conclude that in this case, the electronic device search condition imposed by the trial court would facilitate the effective supervision of defendant during his probation period by helping his probation officer determine whether defendant was complying with the terms of his probation, thereby deterring the future commission of identity theft crimes by defendant, effectuating the rehabilitative purpose of section 1203.1 and protecting the public. (*Olguin, supra,* 45 Cal.4th at pp. 378, 380-381; *Valdivia, supra,* 16 Cal.App.5th at pp. 1138-1139, review granted; *id.* at pp. 1137-1138 [rejecting the contention that a probation condition must have a specific connection to the facts of the current offense or the defendant's past criminal conduct]; *In re P.O., supra,* 246 Cal.App.4th at p. 295; see *People v. Mason* (1971) 5 Cal.3d 759, 764 (*Mason*), [validating a search condition aimed at deterring or discovering subsequent criminal offenses], disapproved on another ground in *Lent, supra*, 15 Cal.3d at p. 486, fn. 1; *Balestra, supra*, 76 Cal.App.4th at pp. 65-68.) As the Supreme Court explained in *Olguin*, as a general rule, "[a] condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality.' " (*Olguin, supra,* 45 Cal.4th at pp. 380-381.)

10

Defendant nevertheless argues the electronic device search condition is not reasonably related to his future criminality because there is no reasonable relationship between the condition and his current offense or his social and criminal history. Defendant asks us to follow *In re Erica R.* (2015) 240 Cal.App.4th 907 and *In re J.B.* (2015) 242 Cal.App.4th 749.

The minor in *In re Erica R.* admitted to misdemeanor possession of Ecstasy after a school counselor found a baggie of pills in her purse. (*In re Erica R., supra,* 240 Cal.App.4th at p. 909.) The juvenile court placed the minor under supervision with the condition that she submit to searches of her electronic devices and turn over her passwords to her probation officer. (*Ibid.*) The juvenile court said, " 'I found in practice that many juveniles, many minors, who are involved in drugs tend to post information about themselves and drug usage. They post photos of themselves using drugs and drug paraphernalia. This is the way of keeping track [of] her drug usage, not just a way of testing her.' " (*Id.* at p. 910, fn. omitted.) The Court of Appeal struck the electronic device search condition under *Lent* because there was no evidence connecting the minor's electronic device or social media usage to her offense or to a risk of future criminal conduct. (*In re Erica R., supra*, at pp. 909-910.) With regard to the third factor under *Lent,* the appellate court said the record did not support a conclusion that the electronic device search condition was reasonably related to future criminality because nothing in the minor's past or current offenses or her personal history showed a predisposition to use electronic devices or social media in connection with criminal activity. (*Id.* at p. 913.)

The minor in *In re J.B.* admitted committing a petty theft. (*In re J.B., supra*, 242 Cal.App.4th at p. 752.) The trial court placed the minor on probation with the condition that he submit to searches of his electronics and disclose his passwords. (*Ibid.*) The trial court explained it imposed the condition because the minor admitted using marijuana, people who used drugs tended to record their usage on the Internet, the condition deterred the minor from committing crimes and allowed his probation officer to

monitor what he was doing, the minor's grade point average was 0.0, and on one occasion the minor played on his cell phone during an interview with his mother and the probation officer. (*Id.* at p. 753.) The Court of Appeal held the electronic device search condition was unreasonable because there was no evidence connecting the minor's electronic device or social media usage to his offense or to a risk of future criminal conduct. (*Id.* at pp. 752, 756-757.)

We do not find *In re Erica R.* persuasive because it does not consider the California Supreme Court's interpretation of *Lent*'s third factor in *Olguin*. The condition in *Olguin*—requiring notice of the presence of pets kept at the defendant's residence—had no relationship to the defendant's offense of driving under the influence of alcohol. (*Olguin, supra,* 45 Cal.4th. at pp. 379-380.) That fact, however, did not require invalidating the probation condition under *Lent*. There is also no indication in the Supreme Court's opinion in *Olguin* that the defendant had any pets, planned to have a pet, or had a history of engaging in conduct which interfered with compliance visits or unannounced searches. Nevertheless, *Olguin* held that the pet notice condition was reasonably related to deterring future criminality because it facilitated the effective supervision of the probationer; in particular, the condition helped probation officers make unscheduled visits and conduct unannounced searches of the probationer's residence, which was a term of probation the defendant did not challenge. (*Id.* at pp. 378, 380-381.) *In re Erica R.* failed to consider whether the electronic device search condition in that case would aid in the effective supervision of the minor and serve the goals of probation. (*In re Erica R., supra*, 240 Cal.App.4th at pp. 913-915.)

*In re J.B.* considered *Olguin* but questioned whether *Olguin* "justifies a probation condition that facilitates [the] general supervision of a ward's activities if the condition requires or forbids noncriminal conduct bearing no relation to the minor's offense that is not reasonably related to potential future criminality as demonstrated by the minor's history and prior misconduct." (*In re J.B., supra*, 242 Cal.App.4th at p. 757.) *Olguin*,

12

however, does not require the risk of future criminality to be established by the probationer's history and prior misconduct. (*Olguin, supra*, 45 Cal.4th at pp. 380-381.) Also, *In re J.B.* conflates the analysis under *Lent* with a determination whether a probation condition is unconstitutionally overbroad. (*In re J.B., supra*, 242 Cal.App.4th at pp. 757-758; *In re P.O., supra*, 246 Cal.App.4th at p. 296 [claim of violation of the minor's privacy is better addressed by the overbreadth doctrine and not under *Lent*); cf. *Moran, supra*, 1 Cal.5th 398 at pp. 406-408 [examining validity under *Lent* separately from constitutional claims]; *Olguin, supra*, 45 Cal.4th at pp. 384-387 [same].) As we have explained, the electronic device search condition in this case is valid under *Lent*, as interpreted in *Olguin*.

II

*The Electronic Device Search Condition Is Not Unconstitutionally Overbroad*

Defendant also claims the electronic device search condition is unconstitutionally overbroad in that it infringes on his state and federal constitutional rights to privacy.

The Attorney General first responds that defendant waived his privacy claims by consenting to the electronic device search condition. We reject the Attorney General's contention. A defendant who accepts a term of probation may, after objecting in the trial court, challenge the condition as unconstitutional. (*Moran, supra*, 1 Cal.5th at p. 403, fn. 5; *People v. Woods* (1999) 21 Cal.4th 668, 678, fn. 5; *People v. Brandão* (2012) 210 Cal.App.4th 568, 572.) Defendant objected to the electronic device search condition in the trial court, asserting that the condition violated his right to privacy and was overbroad. The record does not show that he waived his right to challenge the condition on appeal on those grounds.

We also reject the Attorney General's claim that defendant forfeited his state constitutional claims. We interpret defendant's trial court objection to include a state constitutional claim.

13

Defendant asserts the search condition is overbroad because it violates his right to privacy under the Fourth and Fourteenth Amendments to the federal constitution and article 1, section 1, of the state constitution. We disagree. But before we explain why, we first discuss the test we are to apply to determine whether the condition violates defendant's right to privacy. It is a different test than what a number of courts have applied to this issue.

A. The Inapplicability of the "Closely Tailored" Test

Generally, " '[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' (*In re Sheena K.* (2007) 40 Cal.4th 857, 890[.])" (*Olguin, supra,* 45 Cal.4th at p. 384; *People v. Harrisson* (2005) 134 Cal.App.4th, 637, 641.) Many of the appellate courts, including a panel of this court, that have evaluated the constitutionality of electronic device search conditions did so using this "closely tailored" test. (See *Valdivia, supra*, 16 Cal.App.5th at p. 1142, review granted; *People v. Appleton* (2016) 245 Cal.App.4th 717, 723; *In re Ricardo P., supra*, 241 Cal.App.4th 676, review granted.) [3]

---

[3]     Some of the cases now before the California Supreme Court that held electronic device search conditions were valid under *Lent* were, nevertheless, unconstitutionally overbroad because they were not tailored to limit the impact on the probationer's privacy rights. (*Valdivia, supra*, 16 Cal.App.5th at p. 1142, review granted; *In re Ricardo P., supra,* 241 Cal.App.4th at pp. 687-689, review granted; *In re Alejandro R., supra,* 243 Cal.App.4th at pp. 567-568, review granted; *In re Patrick F., supra*, 242 Cal.App.4th at pp. 112-114, review granted.)

Others upheld electronic device search conditions against an overbreadth challenge based on the alleged violation of the probationer's privacy rights. (*People v. Maldonado* (2018) 22 Cal.App.5th 138, 144-145, review granted June 20, 2018, S248800 [condition not overbroad because prohibition against arbitrary, capricious, or harassing searches sufficiently protected defendant]; *Trujillo, supra,* 15 Cal.App.5th at pp. 586-589, review granted [probation was needed to monitor the defendant; search condition was no different than conditions authorizing warrantless searches of a probationer's residence];

14

However, a more deferential standard of review applies where the constitutional right being infringed is the defendant's right to privacy. The privacy right defendant asserts arises from the privacy interests protected by the Fourth Amendment. The test for reviewing infringements of Fourth Amendment privacy is not whether the infringement is closely tailored to its governmental purpose. Instead, it is whether the infringement is reasonable after weighing the competing interests.

"The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. (*New Jersey v. T.L.O.* [(1985) 469 U.S. 325, 337-342] [83 L.Ed.2d 720].) The permissibility of a particular law enforcement practice is judged by 'balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' [Citations.]" (*U.S. v. Montoya de Hernandez* (1985) 473 U.S. 531, 537 [87 L.Ed.2d 381].) Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." (*U.S. v. Knights* (2001) 534 U.S. 112, 118-119 [151 L.Ed.2d 497] (*Knights*) (internal quotation marks omitted).)

---

*In re Q.R.* (2017) 7 Cal.App.5th 1231, 1236-1239, review granted Apr. 12, 2017, S240222 ["robust access" to the minor's electronic devices was critical to probation supervision in case where the minor used an electronic device to commit the charged offenses]; *In re J.E., supra,* 1 Cal.App.5th at pp. 803-807, review granted [minor's circumstances required intensive supervision]; *People v. Nachbar* (2016) 3 Cal.App.5th 1122, 1128-1130, review granted Dec. 14, 2016, S238210 [electronic device search condition was suitably tailored in light of the defendant's need for intensive monitoring]; *In re A.S., supra,* 245 Cal.App.4th at pp. 772-775, review granted the minor's broad array of problems required intensive supervision].)

The California Supreme Court did not grant review on the issue of overbreadth in the above cases. However, the court, after first deferring further action in the case, has asked the parties in *Trujillo* to submit briefing on the issue.

15

We apply the same test when evaluating infringements of the state constitutional right of privacy under article 1, section 1.  Unlike other state constitutional rights, "[t]he 'privacy' protected by [article 1, section 1] is no broader in the area of search and seizure than the 'privacy' protected by the Fourth Amendment . . . ." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 30, fn. 9.)  "Under the Fourth Amendment and the parallel search and seizure clause of the California Constitution (art. I, § 13), the reasonableness of particular searches and seizures is determined by a general balancing test 'weighing the gravity of the governmental interest or public concern served and the degree to which the [challenged government conduct] advances that concern against the intrusiveness of the interference with individual liberty.'  [Citation.]" (*Id*. at pp. 29-30, fn. omitted.; *People v. Buza* (2018) 4 Cal.5th 658, 684-685.)

The United States Supreme Court has not required a probation or parole search condition be "closely tailored" when it infringes on an expectation of privacy.  Instead, it has evaluated the condition under the general balancing test just described to determine whether the intrusion was reasonable under the circumstances.  In *Knights, supra*, 534 U.S. 112, the court upheld the constitutionality of searches made pursuant to the probation condition commonly used in California requiring the probationer to submit his " 'person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant[.]' " (*Id*. at p. 114.)  Affirming the investigative search of a probationer's home and vehicle who was suspected of arson, the court ruled the search was reasonable under "our general Fourth Amendment approach of 'examining the totality of the circumstances,' [citation], with the probation search condition being a salient circumstance" (*id*. at p. 118), an approach the court called its "ordinary Fourth Amendment analysis[.]" (*Id*. at p. 122.)  The balance of the state's interest in rehabilitating the probationer and protecting the public from additional harm by him outweighed the probationer's limited interest in privacy.  (*Id*. at p. 121.)

16

The *Knights* court did not address whether the probation condition so diminished the probationer's expectation of privacy that a search without individualized suspicion would have satisfied the Fourth Amendment's reasonableness requirement. (*Knights, supra*, 534 U.S. at p. 120, fn. 6.) It did not because the search before it was supported by reasonable suspicion. (*Ibid*.) In *Samson v. California* (2006) 547 U.S. 843 [165 L.Ed.2d 520] (*Samson*), the court addressed that issue, albeit in the context of a parole search condition.

The *Samson* court upheld the warrantless and suspicionless search of a parolee. It did so by applying the same balancing test of reasonableness it applied in *Knights*: "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' ([*Knights, supra*, 534 U.S. at pp.] 118-119 (internal quotation marks omitted.)" (*Samson, supra*, 547 U.S. at p. 848.) Upholding the search, the court found the state's interests in supervising parolees, who have a high recidivism rate, and reintegrating them into the community were "substantial" and "overwhelming" in light of the parolee's reduced interest in privacy. (*Id*. at pp. 850-855.) Although *Samson* noted parolees have fewer expectations of privacy than probationers (*id.* at p. 850), the balancing test for conditions affecting both probationers and parolees is reasonableness, and the government may still impose reasonable conditions that deprive a probationer of freedoms enjoyed by law-abiding citizens. (*Knights, supra*, 534 U.S. at p. 119.)

The United States Supreme Court has used the same balancing test of reasonableness to review other infringements of Fourth Amendment privacy rights without determining whether the intrusion was "closely tailored" to its purpose. For example, by applying the balancing test, the court found to be reasonable, and thus constitutional, a state statute requiring officers to take a DNA swab from persons charged with committing crimes of violence even though the swab was taken without a warrant

17

(*Maryland v. King* (2013) 569 U.S. 435, 448 [186 L.Ed.2d 1]); a warrantless search of public employees' offices and desks (*O'Connor v. Ortega* (1987) 480 U.S. 709, 725-726 [94 L.Ed.2d 714]; and warrantless searches of school students (*New Jersey v. T.L.O., supra*, 469 U.S. at pp. 341-342). Applying the same balancing test of reasonableness, the high court found unconstitutional a police officer's warrantless search of an arrestee's cell phone. (*Riley v. California* (2014) 573 U.S. 373 [189 L.Ed.2d 430] (*Riley*).) While the competing interests in these cases were different from each other, the high court nonetheless applied the general balancing test of reasonableness to determine constitutionality in each of them.

The California Supreme Court has yet to speak on the constitutionality of electronic device probation search conditions, perhaps because under California law, probation search conditions are constitutionally valid due to the probationer's waiver of all Fourth Amendment rights when the probationer accepts probation. (*Bravo, supra*, 43 Cal.3d at p. 607; *Mason, supra*, 5 Cal.3d at pp. 765-766.)[4]

In many similar contexts, however, the California Supreme Court has reviewed the constitutionality of a search or a search condition's infringement on Fourth Amendment privacy under the general balancing test of reasonableness, not whether the condition was closely tailored. For example, the court upheld as reasonable, and thus constitutional, a statute's requirement to collect DNA samples from persons arrested for felonies (*People v. Buza, supra*, 4 Cal.5th at pp. 684-691); a statute's requirement to collect DNA samples from convicted felons (*People v. Robinson* (2010) 47 Cal.4th 1104, 1120-1122); and a condition requiring an arrestee released from custody on his own recognizance to submit

---

[4] The *Knights* court did not address the condition's validity under California's doctrine of consent because it found the search reasonable. (*Knights, supra*, 534 U.S. at p. 118.)

18

himself to random drug tests and warrantless searches and seizures (*In re York* (1995) 9 Cal.4th 1133, 1137, 1150-1151).

The California Supreme Court has applied the balancing test in other contexts involving the right to privacy. It applied the balancing test to conclude a probation condition requiring the probationer to waive his psychotherapist-patient privilege did not violate his right to privacy. (*People v. Garcia* (2017) 2 Cal.5th 792, 810-811.) It also applied the balancing test to determine that a trial court's erroneous disclosure of a parolee's statements to his therapist in a hearing to commit the parolee as a sexually violent predator did not violate the parolee's Fourth Amendment privacy. (*People v. Gonzales* (2013) 56 Cal.4th 353, 386.)

The California Supreme Court has analyzed the constitutionality of parole search conditions under the balancing test for reasonableness. In *People v. Reyes* (1998) 19 Cal.4th 743 (*Reyes*), the court applied the balancing test to hold that a warrantless blanket search condition imposed on a parolee and executed without suspicion of wrongdoing did not violate the Fourth Amendment. (*Id*. at p. 752.) "When parole or probation searches are involved," the court wrote, "the balance struck between individual interest and government necessity is implicit in the determination that a 'warrantless search condition is a reasonable term' in a parole or probation agreement." (*Ibid*.)

In *People v. Schmitz* (2012) 55 Cal.4th 909, the California Supreme Court applied the balancing test to hold a warrantless search of a known parolee who was a passenger in a vehicle did not violate the driver's Fourth Amendment rights. (*Id*. at pp. 921-922.) The court described the test as follows: "Whether a search is reasonable within the meaning of the Fourth Amendment depends on the ' "totality of the circumstances." ' [Citations.] This test includes an assessment of the degree to which a search promotes legitimate governmental interests, balanced against the degree to which it intrudes upon an individual's privacy. [Citations.] Both we and the United States Supreme Court have employed traditional standards of reasonableness to evaluate the constitutionality of

19

warrantless vehicle searches and parole searches. Accordingly, we consider whether the officer's search here was reasonable, with a 'salient circumstance' being the presence of a parolee subject to a search condition. [Citations.]" (*Id*. at pp. 921-922.)

The California Supreme Court has also applied the balancing test in probation and parole search cases involving third parties' privacy rights. In *Robles, supra*, 23 Cal.4th 789, the court determined the police violated the defendant's reasonable expectations of privacy under the Fourth Amendment when they searched a garage attached to his residence that he shared with a probationer, and they did so without a warrant, without consent, and without knowing the roommate was on probation. (*Id*. at p. 800.) The court reached the same conclusion when police searched an apartment shared by the defendant and a parolee without knowing the parolee's status. (*People v. Sanders* (2003) 31 Cal.4th 318, 330.) The issue again was reasonableness: "[W]hether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted." (*Id*. at p. 334.)

Even though the California Supreme Court has reviewed privacy challenges to probation search conditions almost uniformly under the doctrines of consent and waiver, it has indicated the reasonableness balancing test would apply were it not reviewing the condition as one of consent. In its first case to address these issues, *Mason, supra*, 5 Cal.3d 759, the high court decided the case based on waiver, but it stated the reasonableness test was also at play: "We have heretofore suggested . . . that persons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands [Citations.] Thus, a probationer who has been granted the privilege of probation on condition that he submit [himself] at any time to a warrantless search may have no

20

reasonable expectation of traditional Fourth Amendment protection."  (*Id*. at pp. 764-765.)

And at least on one occasion, the court has upheld a blanket probation search condition under the general balancing test of reasonableness as well as consent.  In *People v. Ramos* (2004) 34 Cal.4th 494, the court upheld on the basis of reasonableness a search of a suspect's home and truck conducted pursuant to a probation condition authorizing warrantless searches of "person, property and automobile" at any time.  (*Id*. at pp. 504-506.)  In none of these cases did the court reach its decision based on whether the unlimited search conditions were "closely tailored" to their purpose.

In contrast, the cases that require a probation condition be closely tailored to its purpose, and on which other courts of appeal have relied when reviewing an electronic device search condition, did not involve a right to privacy under the Fourth Amendment.  In *Olguin, supra*, 45 Cal.4th 375, the probationer claimed the condition requiring him to notify his probation officer of pets infringed his rights of speech and association, not his privacy rights.  (*Id*. at p. 384.)  The court in *In re Sheena K., supra,* 40 Cal.4th 875, by applying the "closely tailored" test, found a condition prohibiting the probationer from associating with anyone not approved by the probation officer to be unconstitutionally vague in violation of due process, not Fourth Amendment privacy.  (*Id*. at p. 890.)  The authority that *In re Sheena K.* relied on to impose the "closely tailored" test, *In re White* (1979) 97 Cal.App.3d 141, held a condition prohibiting a probationer convicted of prostitution from being in certain geographical areas violated the probationer's right to travel.  (*Id*. at pp. 148-150.)  And in *People v. Harrisson, supra*, 134 Cal.App.4th 637, a case heavily relied upon as authority for the "closely tailored" test, this court applied that test to invalidate conditions that infringed on the probationer's rights to work, communicate, and associate with others.  (*Id*. at p. 642.)  The case did not concern the Fourth Amendment right to privacy.  Indeed, the opinion's claim that "[i]t is not enough to show the government's ends are compelling" does not square with the United States

21

Supreme Court's and the California Supreme Court's Fourth Amendment jurisprudence. (*Id*. at p. 641.)

We thus conclude the courts of appeal that have applied the "closely tailored" test to a probation search condition allowing the search of a probationer's electronic devices applied the wrong test. The appropriate test is the balancing of interests to determine reasonableness that the United States Supreme Court and the California Supreme Court consistently apply to alleged violations of Fourth Amendment privacy rights. This test correctly determines a person's right to privacy against unreasonable searches and seizures.

Understanding the reasonableness test is the proper standard of review leads to another important conclusion: " 'If the search is reasonable, *there is no constitutional problem*, for the Fourth Amendment only protects individuals from unreasonable searches and seizures. (*Skinner* [*v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602], 619 [103 L.Ed.2d 639].)' " (*People v. Travis* (2006) 139 Cal.App.4th 1271, 1282, quoting U.S. *v. Sczubelek* (3d Cir. 2005) 402 F.3d 175, 182, italics added.) In other words, if the search condition is constitutionally reasonable, it is by definition not overbroad.

Thus, our review of the electronic device search condition does not look for overbreadth under the "closely tailored" standard. Rather, it weighs defendant's interest in his privacy against the state's interests in support of the search condition. " 'The touchstone of the Fourth Amendment is reasonableness . . . .' ([*Knights, supra*, 534 U.S. at pp.] 118-119 [].) 'When faced with . . . diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.' *(Illinois v. McArthur* (2001) 531 U.S. 326, 330 [148 L.Ed.2d 838]; accord, *People v. Robinson,* [*supra,* 47 Cal.4th at p.] 1120.)

"Whether a search is reasonable within the meaning of the Fourth Amendment depends on the ' "totality of the circumstances." ' *(Samson, supra*, 547 U.S. at p. 848; see *Ohio v. Robinette* (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347].) This test includes an assessment of the degree to which a search promotes legitimate governmental interests, balanced against the degree to which it intrudes upon an individual's privacy. (*Samson, supra*, at p. 848; [*Wyoming v. Houghton* (1999) 526 U.S. 295,] 300 [143 L.Ed.2d 408].)" (*People v. Schmitz, supra*, 55 Cal.4th at p. 921.) Accordingly, we consider whether the electronic device search condition was reasonable, with a "salient circumstance" being defendant was subject to the search condition as a condition of probation. (*Knights, supra*, 534 U.S. at p. 118; accord, *Samson, supra*, 547 U.S. at p. 848.) We review the constitutionality of probation conditions de novo. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.)

B. The <u>Electronic</u> <u>Device</u> <u>Search</u> <u>Condition</u> <u>Agreed</u> <u>to</u> <u>by</u> <u>Defendant</u> <u>and</u> <u>Imposed</u> <u>by</u> <u>the</u> <u>Court</u> <u>was</u> <u>Constitutionally</u> <u>Reasonable</u>

Weighing the competing interests, we turn first to determine the degree to which the electronic device search condition promotes legitimate governmental interests. We have discussed the government's interest already. (See pp. 7-9, *supra*.) The *Knights* court explained it clearly: "In assessing the governmental interest side of the balance, it must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.' *(Griffin,[ supra*, 483 U.S. at p.] 880.) The recidivism rate of probationers is significantly higher than the general crime rate. [Citation.] And probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply. [Citations.]

23

"The State has a dual concern with a probationer.  On the one hand is the hope that he will successfully complete probation and be integrated back into the community.  On the other is the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community. . . .  [The state's] interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." (*Knights, supra*, 534 U.S. at pp. 120-121.)

Further, the effectiveness of a search condition as a deterrent to committing more crime "is enhanced by the potential for random searches." (*Reyes, supra*, 19 Cal.4th at p. 753.)

"Moreover, it must be remembered that probation is an 'important aspect[] of the state's penal system,' the 'optimum successful functioning' of which 'is of compelling public interest.' [Citation.]" (*Robles, supra*, 23 Cal.4th at p. 799.)  The electronic device search condition significantly promotes the state's interest in the effectiveness of its penal system, protecting the community, and in rehabilitating defendant by authorizing probation officers to determine from defendant's electronic devices whether defendant is complying with the terms of his probation and the law and is integrating into the community in lawful ways.

In addition, the search condition promotes the state's specific interest in defendant, for, as mentioned above, it relates to the crime to which defendant admitted committing. He admitted to acquiring personal identifying information unlawfully.  As the trial court found, electronic devices are extremely useful in manufacturing, obtaining, and using the kinds of items found in defendant's possession.  The state thus has grounds to believe future similar criminality by defendant would be found on his cell phone and other electronic devices.

We compare the state's interest in the search condition with the degree to which the condition intrudes upon defendant's privacy.  To assess this factor, we look "to a

hierarchy of privacy interests. Reasonable expectations of privacy that society is prepared to recognize as legitimate receive the greatest level of protection; diminished expectations of privacy are more easily invaded; and subjective expectations of privacy that society is not prepared to recognize as legitimate have no protection. [Citations.]" (*Reyes, supra*, 19 Cal.4th at p. 751.)

There is no doubt defendant had a diminished expectation of privacy due to his status as a probationer. " 'Probation, like incarceration, is "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." ' (*Griffin, supra*, at [p.] 874 (quoting G. Killinger, H. Kerper, & P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976)). Probation is 'one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.' ([*Id*. at p.] 874.) Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' (*Ibid*., quoting *Morrissey v. Brewer* [(1972)] 408 U.S. 471, 480 [33 L.Ed.2d 484] [].) Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." (*Knights, supra*, 534 U.S. at p. 119.)

Defendant's expectation of privacy is further reduced by his understanding and accepting the search condition. "[T]he expectation of privacy [is] greatly reduced when the subject of the search is on notice that his activities are being routinely and closely monitored." (*Reyes, supra*, 19 Cal.4th at p. 753.) The probation order clearly expressed the search condition, and defendant was "unambiguously informed of it. The probation condition thus significantly diminished [defendant's] reasonable expectation of privacy." (*Knights, supra*, 534 U.S. at pp. 119-120, fn. omitted.)

Weighing the state's interests and defendant's reduced interests, we conclude the electronic device search condition here is reasonable for purposes of the Fourth

Amendment and does not offend defendant's diminished expectations of privacy. The degree to which the search condition promotes the government's significant, if not compelling, interests in integrating defendants and protecting the community outweighs defendant's limited expectations against government intrusion.

The intrusion is little different from the condition authorizing warrantless searches of defendant's residence. Like an electronic device, "a person's home also contains considerable confidential information and is a place in which a person has the absolute right to be 'left alone,' and thus has long been provided the highest level of protection from governmental interference." (*Trujillo, supra*, 15 Cal.App.5th at p. 587.) "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' (*Silverman v. United States* [(1961)] 365 U.S. 505, 511 [5 L.Ed.2d 734] [].)" (*Florida v. Jardines* (2013) 569 U.S. 1, 6 [185 L.Ed.2d 495].) " '[T]he "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' (*Payton v. New York* (1980) 445 U.S. 573, 585 [63 L.Ed.2d 639].)" (*People v. Schmitz, supra*, 55 Cal.4th at p. 919.) As a "basic principal of Fourth Amendment law . . . searches and seizures inside a man's house without warrant are per se unreasonable in the absence of some one of a number of well defined 'exigent circumstances.' " (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 477-478 [29 L.Ed.2d 564].)

"Yet courts routinely uphold probation conditions granting probation officers broad authority to search a probationer's residence without a warrant or reasonable cause." (*Trujillo, supra*, 15 Cal.App.5th at p. 588; *Knights, supra*, 534 U.S. at pp. 118-122; *People v. Woods, supra*, 21 Cal.4th at pp. 674-675.) Courts uphold these conditions as reasonable even though the conditions are not expressly limited or tailored in some

way to restrict the search's scope. This is due to the probationer's reduced expectation of privacy. We see little difference between the two types of search conditions.[5]

Many courts of appeal that have invalidated an electronic device search condition as overbroad in violation of a probationer's right to privacy have relied on *Riley, supra*, 573 U.S. 373 to conclude the condition was not closely tailored to further its purpose and would allow the searching officers to view items the courts believed had little to do with the state's interest in integrating the probationer and protecting the community. (*Valdivia, supra*, 16 Cal.App.5th at pp. 1142-1145, review granted[6]; *Appleton, supra*, 245 Cal.App.4th at pp. 724-725.)

*Riley* held that a police officer's warrantless search of a civilian's cell phone incident to his arrest was an unreasonable search in violation of the Fourth Amendment. *Riley's* Fourth Amendment analysis was made in the context of searches incident to arrest and not in the context of probation. *(Riley, supra*, 573 U.S. at p. 382.) As a result, it is

---

[5]  Defendant was also subject to warrantless searches of his residence, and he did not object to that condition.

[6]  *Valdivia* struck an electronic device search condition identical to the one in this case as unconstitutionally overbroad because, under the circumstances in that case, there was no substantial reason for believing that evidence of future criminal activity by the defendant was likely to be found on electronic storage devices under the defendant's control. (*Valdivia, supra*, 16 Cal.App.5th at pp. 1135-1136, 1145-1147, review granted.) The defendant in *Valdivia* pleaded no contest to a charge of inflicting corporal injury on a spouse. (*Id.* at p. 1134.) There was no evidence the defendant used an electronic device in committing the crime or for a wrongful purpose in the past. (*Id.* at p. 1145.) And there was no indication that he had previously physically assaulted his wife. (*Ibid.*) The *Valdivia* court said the record, unlike the record in this case, demonstrated little likelihood or even possibility that evidence of illegal activity will be found in the devices subject to search under the condition. (*Ibid.*)

Without deciding whether the analysis in *Valdivia* is correct, we observe that the nature of defendant's offense (identity theft) and other specific probation terms targeted at deterring re-offense provide stronger justification for the imposition of an electronic device search condition here than in *Valdivia*.

27

inapposite because a probationer is not entitled to the same expectation of privacy as an ordinary citizen (*Mason, supra*, 5 Cal.3d at p. 768), and the governmental interests supporting a warrantless search incident to a lawful arrest are different from those justifying a probation search condition. *(Riley, supra*, 573 U.S. at pp. 384-385 [concerns for officer safety and evidence preservation underlie the search incident to arrest exception to the warrant requirement]; cf. *Knights, supra*, 534 U.S. at pp. 120-121 [state's interests are that the probationer will successfully complete probation and integrate back into the community and protect the community from future lawbreaking by the probationer].)

Nonetheless, courts have relied on *Riley's* discussion of privacy concerns implicated by cell phone searches to invalidate electronic device search conditions. Defendant's main argument against the search condition is based on *Riley*. In dicta, the *Riley* court stated, "[A] cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." (*Riley, supra*, 573 U.S. at p. 396, italics omitted.) Despite this statement, we believe *Riley* is distinguishable and does not foreclose our ruling.

*Riley* stated the data accessible on cell phones was quantitatively different from traditional records. *(Riley, supra*, 573 U.S. at pp. 391-395.) But *Riley* made its comparison of a cell phone to objects that a civilian arrestee might keep on his person, such as a cigarette pack, a wallet or a purse, not a house. (*Id*. at pp. 392-393.) Many of the uses the *Riley* court stated would be part of a cell phone could certainly be in a probationer's residence and subject to search. Such items include "cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." (*Id*. at p. 393.) Like cell phones, homes can hold "millions of pages of text, thousands of pictures, and hundreds of videos." (*Id*. at p. 394.) Like cell phones,

homes can collect in one place "many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record." (*Ibid.*)  And, as already shown, probation conditions authorizing warrantless searches of homes are reasonable.

*Riley* notes, "Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day." *(Riley, supra*, 573 U.S. at p. 395.)  But people maintained, and continue to maintain, "a cache of sensitive personal information" in their homes.  Photos, medicines, financial statements, books, magazines, receipts, mail, clothing, trinkets, equipment, and even garbage may reflect " 'a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.' " (*Id*. at p. 396, quoting U.S. *v. Jones* (565 U.S. 400, 415 [181 L.Ed.2d 911] conc. opn. of Sotomayor, J. [warrantless attachment of GPS monitor to car was a search].)  A peace officer searching a probationer's residence will see all of this information and still not violate the probationer's Fourth Amendment rights.  Simply because a cell phone may allow access to more of this type of information in one place does not give the probationer a greater expectation of privacy in the same type of information than he keeps in his home.  "[T]he fact that a search of an electronic device may uncover comparatively more private information than the search of a person, or a personal item like a wallet, does not establish that a warrantless electronic search condition of probation is per se unconstitutional." (*People v. Guzman* (2018) 23 Cal.App.5th 53, 65.)

*Riley* also stated that data stored on cell phones was "qualitatively different" than physical records. *(Riley, supra*, 573 U.S. at p. 395.)  Browsing histories could reveal private concerns, historic location information could reconstruct a person's movements down to the minute and inside a building, and installed mobile application software "can form a revealing montage of the user's life." (*Id*. at p. 396; *Carpenter v. U.S.* (2018) __ U.S. __ [201 L.Ed.2d 507] [police acquisition of wireless carrier's cell-site records

revealing the past locations of suspect's cell phone was a search that required a warrant].) Additionally, the data stored on cell phones may not be stored on the device itself but instead on remote servers. (*Riley, supra*, 573 U.S. at p. 397.)

We do not dispute these characteristics of cell phone data. What we dispute with our sister courts is whether they put a cell phone beyond reach of a warrantless probation search of a probationer's home or person where the cell phone is found. This issue *Riley* expressly did not decide. (*Riley, supra*, 573 U.S. at p. 395, fn. 1.)

We believe these qualitative characteristics do not imbue a probationer's cell phone with greater privacy protection than his home due to the state's significant interests in integrating the probationer and protecting the public and the probationer's limited expectations of privacy. The state already can obtain much of this qualitatively-different information from probationers in other ways. For example, unlike with a citizen, the state has a strong interest in knowing a probationer's whereabouts and activities. Thus, courts may order a probationer as a condition of probation to be subject to *continuous* electronic monitoring by GPS. (§ 1210.7; *In re R.V.* (2009) 171 Cal.App.4th 239, 247-248.) Cell phone data that records a probationer's whereabouts is little different from what the state can already lawfully acquire.

Similarly, if a court requires the probationer as a condition of probation to work and earn money, it may require the probationer to keep a record of his expenses and earnings and report them to the probation officer. (§ 1203.1, subd. (d); *People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1129-1130.) Such records would be as detailed, if not more so, as the probationer's bank statements. And third party interests have not been a concern in probation or consent searches when the probationer has common or superior authority over the area or item being searched. (See *People v. Woods, supra*, 21 Cal.4th at pp. 675-676.)

Moreover, the risk of disclosing the probationer's confidential information is little different whether police search a phone or a home. Officers searching a probationer's

30

cell phone will treat it no differently than they treat private information and items they find in a home. Any possible item a probationer could store in a home, be it innocuous or embarrassing, benign or incriminating, officers have seen without a warrant and without probable cause during a probation search even though the specific item or information is not relevant to the search's purposes. This has caused courts no concern so long as the search itself is reasonably related to the purposes of probation. (*Robles, supra*, 23 Cal.4th at p. 797.)

Moreover, the search of a phone, like a home, will be adequately circumscribed by law. Any "concern that California's suspicionless search system gives officers unbridled discretion to conduct searches, thereby inflicting dignitary harms that arouse strong resentment in parolees [or probationers] and undermine their ability to reintegrate into productive society, is belied by California's prohibition on 'arbitrary, capricious or harassing' searches." (*Samson, supra*, 547 U.S. at p. 856; *Bravo, supra*, 43 Cal.3d at pp. 610–611.)

To be sure, officers will conduct a thorough search. "[A] consent search [which a probation search is in California], to be effective, must be thorough." (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1415.) "[T]he reasonable understanding of what search means . . . is to look for things that the officer suspects may be evidence of a crime." (*People v. Williams* (1980) 114 Cal.App.3d 67, 73.) "[T]he term 'search' implies something more than a superficial, external examination. It entails 'looking through,' 'rummaging,' 'probing,' 'scrutiny,' and 'examining internally.' " (*U.S. v. Snow* (2d Cir. 1995) 44 F.3d 133, 135.)

However, when an officer views a private or confidential item on an electronic device that does not further probation's purposes of enforcing the law and rehabilitating the probationer, the officer will simply pay no attention to the item and continue on with the search, just as officers do in probation home searches. They will not further disclose,

duplicate, or reveal the irrelevant information. To do so would almost certainly constitute capricious or harassing behavior and render the search invalid.

We thus believe the concerns *Riley* expressed about searching a citizen's cell phone do not apply to probationers. Their reduced expectations of privacy are significant, as they have been convicted of a crime, are on probation in lieu of imprisonment, are more likely to reengage in criminal behavior, and the state can already obtain from them much of the information a cell phone records. These reduced expectations do not outweigh the state's interest in rehabilitating the probationer, protecting the public from harm, and ensuring the success of its penal system. We conclude the electronic device search condition is reasonable and does not violate defendant's Fourth Amendment right to privacy.

III

*The Privilege Against Self-Incrimination*

Defendant next argues the electronic device search condition is void because it violates his state and federal constitutional privilege against self-incrimination.

As the Attorney General points out, defendant did not raise a state constitutional self-incrimination claim in the trial court. Defendant's trial court objection was based solely on the Fifth Amendment to the federal Constitution. In addition, defendant's appellate briefs do not analyze his state constitutional claims with citation to supporting authority. For those reasons, we do not consider defendant's state constitutional claim. (*People v. Wilson* (2008) 44 Cal.4th 758, 790, fn. 6; *People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37.)

"The Fifth Amendment, in relevant part, provides that no person 'shall be compelled in any criminal case to be a witness against himself.' It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official

32

questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' [Citation.] In all such proceedings, [¶] 'a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant . . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.' [Citation.]" (*Minnesota v. Murphy* (1984) 465 U.S. 420, 426 [79 L.Ed.2d 409, 418].)

A probationer retains the protections of the Fifth Amendment privilege against self-incrimination. (*Minnesota v. Murphy, supra,* 465 U.S. at p. 426.) However, requiring a probationer to answer questions relevant to his or her probationary status, where the answer may result in revocation of probation but does not pose a realistic threat of incrimination in a separate criminal proceeding, does not give rise to a Fifth Amendment claim. (*Id.* at p. 435, fn. 7.) "[A] State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' [citations], and nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as 'one of a number of factors to be considered by the finder of fact' in deciding whether other conditions of probation have been violated. [Citation.]" (*Ibid.*)

The electronic device search condition in this case requires defendant to provide any and all information necessary to conduct a search of electronic storage devices under defendant's control. While conditioning the grant of probation on a waiver of the Fifth Amendment privilege would be unconstitutional (*Garcia, supra*, 2 Cal.5th at p. 803), the

33

electronic device search condition here does not require defendant to waive his privilege against self-incrimination. Even if the condition requiring defendant to provide information necessary to conduct an electronic search constitutes compelled testimonial communications, nothing on the face of the probation condition authorizes the use of any compelled statements against defendant in a criminal proceeding. Accordingly, the electronic device search condition does not violate defendant's Fifth Amendment rights. (*Chavez v. Martinez* (2003) 538 U.S. 760, 767-769 [155 L.Ed.2d 984, 994-995] [compulsive questioning, without more, does not violate the Fifth Amendment; a violation of the Fifth Amendment only occurs when compelled statements are used against the defendant in a criminal case]; *Garcia, supra*, 2 Cal.5th at pp. 806-807 [statute mandating participation in polygraph examinations as part of sex offender management program does not violate the probationer's Fifth Amendment rights where the probationer's statements could not be used in a subsequent criminal prosecution]; *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1127, 1134 [the Fifth Amendment does not prohibit the government from eliciting self-incriminating disclosures; it only bars the use of such disclosures in a criminal proceeding against the person who made them]; *Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 727 ["Constitutionally based prophylactic rules . . . have arisen to protect the core [Fifth Amendment] privilege, but the right against self-incrimination is not itself violated until statements obtained by compulsion are used in criminal proceedings against the person from whom the statements were obtained"].) Because no violation of defendant's constitutional right has been shown, we do not consider defendant's related overbreadth claim.

## IV

### *The California Electronic Communications Privacy Act*

Defendant also argues the electronic device search condition is invalid under the California Electronic Communications Privacy Act (ECPA) because he did not give specific consent to access his electronic storage devices.

The ECPA was enacted in 2015 and went into effect on January 1, 2016, before defendant was sentenced.  (Stats. 2015, ch. 651, § 1.)  As relevant here, under the ECPA a government entity may not "access electronic device information by means of physical interaction or electronic communication with the electronic device," unless it obtains the "specific consent of the authorized possessor of the device."  (*Ibid.* [§ 1546.1, subds. (a)(3), (c)(3)].)  The issue here is whether defendant gave specific consent to access data on his electronic storage devices within the meaning of section 1546.1, subdivision (c).

Our task in interpreting a statute is to determine the Legislature's intent so as to effectuate the purpose of the statute.  (*In re C.H.* (2011) 53 Cal.4th 94, 100.)  We begin by examining the words of the statute because they are generally the most reliable indicator of legislative intent.  (*Ibid.*)  We give the words of the statute their ordinary and usual meaning.  (*Ibid.*)  If the meaning of the words used in the statute is without ambiguity, the statutory language controls.  (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239.)  If the statutory language is ambiguous or subject to more than one interpretation, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  (*John v. Superior Court* (2016) 63 Cal.4th 91, 96; *In re R.V.* (2015) 61 Cal.4th 181, 192.)  We " 'select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results.' "  (*Poole v. Orange*

*County Fire Authority* (2015) 61 Cal.4th 1378, 1385; see *People v. Hunt* (1999) 74 Cal.App.4th 939, 945-947.)

The apparent purpose of the ECPA is to restrict government access to "electronic device information." The ECPA authorizes government access to such information by means of "physical interaction or electronic communication" with the device upon the "specific consent" of the "authorized possessor of the device." (Stats. 2015, ch. 651, § 1 [§ 1546.1, subd. (c)(3)].) " 'Specific consent' means consent provided directly to the government entity seeking information . . . ." (Stats. 2015, ch. 651, § 1 [§ 1546, subd. (k)].)

In accepting probation, defendant expressly consented to subject the electronic storage devices under his control to search by any law enforcement or probation officer. Defendant waived his rights under the ECPA and "specifically consented to searches of his . . . electronic storage devices."

Defendant argues he did not give specific consent within the meaning of the ECPA because the terms of his probation do not identify any agency to which he was giving consent. But neither section 1546 nor 1546.1 states that the party giving consent must identify the government entity to which consent is given. (Stats. 2015, ch. 651, § 1 [§§ 1546, subd. (k), 1546.1, subd. (c)(3)].)

Defendant also contends he did not give specific consent because he did not consent directly to anyone other than the trial judge. We reject that claim. It is reasonable to imply from defendant's consent to electronic device searches by any law enforcement or probation officer that defendant provided consent directly to law enforcement and probation authorities. The alternative of requiring the People to anticipate and name every government entity which may conduct an electronic device search pursuant to the probation condition, requiring each government entity to which a consent applies to participate in the defendant's sentencing, or requiring a separate consent whenever a government entity seeks to conduct an electronic device search

36

pursuant to the probation condition, could unnecessarily hamper grants of probation and impair the significant government interests served in supervising probationers.

Moreover, we do not glean from the language of sections 1546 and 1546.1—and the parties have not provided us with any legislative history materials showing—an intent to prohibit electronic device search probation conditions. The ECPA does not mention probation. In the absence of any indication that the Legislature intended to affect electronic device search conditions imposed as part of the supervision of probationers when it enacted the ECPA, we decline to reach such a conclusion.

After defendant was sentenced, the Legislature amended section 1546.1 to provide that a government entity may access electronic device information by means of physical interaction or electronic communication with the device "if the device is seized from an authorized possessor of the device who is subject to an electronic device search as a clear and unambiguous condition of probation . . . ." (Stats. 2016, ch. 541, § 3.5 [§ 1546.1, subd. (c)(10), eff. Jan. 1, 2017].) The comments sections of the bill analyses, of which defendant asks us to take judicial notice, suggest that section 1546.1, subdivision (c)(10) addressed an unintended interpretation of the original statute.[7] The amendment further indicates no legislative intent that the ECPA would affect electronic device search conditions.

V

*The E-mail/Internet Account Search*

Defendant further argues the e-mail/Internet account search condition violates his constitutional right to privacy and privilege against self-incrimination for the same reasons the electronic device search condition violates those rights. That search

---

[7]    We grant defendant's unopposed request for judicial notice. (Evid. Code, §§ 452, subd. (c), 453, subd. (a), 459.)

37

condition provides: "Defendant shall disclose all email accounts, all internet accounts and any other means of access to any computer or computer network, all passwords and access codes. Defendant shall consent to the search of such email and internet accounts at any time and for the seizure of any information without a search warrant or probable cause."

Although he acknowledges he did not object to the e-mail/Internet account search condition in the trial court, defendant says he did not forfeit his appellate claims because he brings a facial constitutional challenge only. The Attorney General urges that defendant forfeited his appellate claims because he challenges the e-mail/Internet account search condition as applied to his case and he did not raise such claims in the trial court.

While he maintains his appellate claims present a facial challenge, defendant argues the trial court must specifically tailor the e-mail/Internet account search condition to his offenses and personal history, a claim which does not involve pure questions of law. (*In re I.V.* (2017) 11 Cal.App.5th 249, 260-261; *People v. Kendrick* (2014) 226 Cal.App.4th 769, 777-778.) In any event, it appears from this record that an objection to the e-mail/Internet account search condition on the same grounds raised and rejected as to the electronic device search condition would have been an idle act. Accordingly, we consider defendant's claims on the merits. (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648; *People v. Scalzi* (1981) 126 Cal.App.3d 901, 907.)

For the reasons we have explained with regard to the electronic device search condition, we conclude the e-mail/Internet account search condition does not violate defendant's right to privacy under the Fourth Amendment and the California Constitution because it authorizes a reasonable search in light of the government's prevailing interests in protecting the public and rehabilitating defendant when balanced against his significantly reduced interest in privacy. We reject defendant's claim that the e-mail/Internet account search condition violates his Fifth Amendment rights for the reasons we have explained regarding the electronic device search condition.

38

# VI

## *Ineffective Assistance of Counsel*

Defendant says his trial counsel provided ineffective assistance by failing to object that the e-mail/Internet account search condition was invalid under *Lent* and violated his right to privacy and privilege against self-incrimination.

Because we addressed defendant's constitutional challenges to the e-mail/Internet account search condition, we need not consider his related ineffective assistance of counsel claim. We limit our discussion to defendant's claim that his trial counsel rendered ineffective assistance by failing to object to the e-mail/Internet account search condition under *Lent.*

To establish ineffective assistance of counsel, defendant must prove that his (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) If defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland v. Washington*, *supra*, 466 U.S. at p. 687.)

Defendant must affirmatively prove prejudice to establish ineffective assistance. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) "[T]he record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Maury, supra,* 30 Cal.4th at p. 389.) Defendant must show a reasonable probability of a more favorable result. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218; *Strickland v. Washington, supra*, 466 U.S. at pp. 693-694.)

Defendant fails to show a reasonable probability that the trial court would have stricken the e-mail/Internet account search condition had defendant's trial counsel objected to the condition under *Lent*. The trial court rejected the arguments by defense counsel that the electronic device search condition should not be imposed, and defendant does not convince us the trial court would have ruled differently regarding the e-mail/Internet account search condition.

VII

*The Urinalysis Testing Fee*

In addition, defendant claims the urinalysis testing fee imposed by the trial court is unauthorized under section 1203.1ab, and even if it is authorized, it cannot be made a condition of probation because probation costs are collateral to the offense.

The probation department recommended a $367.81 main jail booking fee and a $67.03 main jail classification fee, among other fees. The recommendation noted that the monthly cost of probation supervision was $46 and urinalysis testing was $25 per test. The trial court did not impose a main jail booking fee, main jail classification fee, or monthly probation supervision fee, but it did impose a urinalysis testing fee. Defendant did not object to the urinalysis testing fee.

Sections 1203.1ab and 1210.1 and Health and Safety Code section 11551 do not authorize the trial court's order. Section 1203.1ab authorizes an order requiring, as a condition of probation, a defendant convicted of an offense involving the unlawful possession, use, sale or other furnishing of any controlled substance to pay the cost of drug and substance abuse testing, under certain circumstances. Section 1210.1 requires drug testing as a condition of probation in a case where the defendant was convicted of a nonviolent drug possession offense. (§ 1210.1, subd. (a).) Defendant was not convicted of a drug-related offense. Moreover, even when it applies, Health and Safety Code section 11551, which authorizes periodic drug tests in certain circumstances, does not

40

authorize an order requiring the probationer to pay the cost of administering the tests. (Health & Saf. Code, § 11551, subds. (a), (d).)

The Attorney General argues section 1203.1, subdivision (j) authorized the trial court to order defendant to undergo urinalysis testing and to pay for the cost of such testing as a means to foster his rehabilitation and ensure public safety. Section 1203.1, subdivision (j) provides that a sentencing court may impose reasonable conditions of probation "as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." A sentencing court's exercise of discretion under section 1203.1, subdivision (j) must be reasonable. (*People v. Beal* (1997 ) 60 Cal.App.4th 84, 86.) As we have explained, a condition of probation will not be held invalid unless it has no relationship to the crime of which the defendant was convicted, relates to conduct which is not in itself criminal, and is not reasonably related to future criminality. (*Moran, supra*, 1 Cal.5th at p. 403; *Lent, supra,* 15 Cal.3d at p. 486.)

Nothing in the record indicates defendant had used illegal drugs or consumed alcohol. Although we review the trial court's order under the deferential abuse of discretion standard (*Moran, supra*, 1 Cal.5th at p. 403), there is simply no support in this record for the challenged probation condition. (Cf. *People v. Shimek* (1988) 205 Cal.App.3d 340, 342-343 [proper to impose drug testing probation condition on a defendant convicted of unlawful cultivation of marijuana because the condition would aid in determining whether the defendant was once again using and cultivating marijuana unlawfully].) Accordingly, we will modify the probation order to strike the condition requiring defendant to pay a $25 urinalysis testing fee.

41

## VIII

### *The Court Facility Fee*

Defendant further argues the order granting probation must be modified to make clear that payment of the court facility fee imposed under Government Code section 70373 is not a condition of probation, and to strike the criminal impact fee imposed pursuant to section 1465.7, subdivision (a) as unauthorized.  The Attorney General agrees.

We also agree.  (§ 1202.4, subd. (e); *People v. Kim,* (2011) 193 Cal.App.4th 836, 842-843.)  We will modify the order granting probation to clarify that the payment of the court facility fee imposed under Government Code section 70373 is not a condition of probation but rather a separate order of the court entered at judgment.  In addition, we will modify the order granting probation to strike the criminal impact fee imposed pursuant to section 1465.7, subdivision (a).

## DISPOSITION

The order granting probation is modified to strike the following:  the condition requiring defendant to pay a $25 urinalysis testing fee, and the requirement that defendant pay a criminal impact fee pursuant to section 1465.7, subdivision (a).  In addition, the order granting probation is modified to provide that the court facility fee imposed pursuant to Government Code section 70373 is not imposed as a condition of probation, but instead is imposed as an order of the trial court entered at judgment.  The order granting probation is otherwise affirmed.

 

 

_____

HULL, Acting P. J.

I concur:

 

 

_____

HOCH, J.

Mauro, J., Concurring and Dissenting.

I fully concur with parts I, III, IV, VI, VII, and VIII of the majority opinion, but I disagree with parts II and V addressing the electronic device search condition and the e-mail/internet search condition (hereafter the e-search conditions), which the majority opinion appears to analyze in the same manner. Although the majority opinion disagrees with the test applied in some other published opinions, I would reach the same result regardless of the test. Whether the appropriate test is the "closely tailored" test or the "reasonableness" test (see the majority opinion at part IIA), I would remand the matter to the trial court to craft more closely tailored, or more reasonable, e-search conditions.

Given the current state of technology, I disagree with the majority that the intrusion imposed by the e-search conditions "is little different from the condition authorizing warrantless searches of defendant's residence." (Maj. opn. *ante*, at p. 26) Unless the e-search conditions are limited in some way, they authorize a potentially far greater intrusion than the search of a residence. Several years ago, in *Riley v. California* (2014) 573 U.S. 373 [189 L.Ed.2d 430] (*Riley*), the United States Supreme Court described the capability of modern mobile devices. (*Id.* at p. 394.) Since then, electronic devices have become even more powerful and capable. An unlimited authorization to search electronic devices implicates privacy concerns far beyond the inspection of an individual's pockets or even the most exhaustive search of a house (see *id.* at pp. 392-397) because modern electronic devices can perform a myriad of functions and can access significant amounts of private information.

Certainly, mobile devices can be used as telephones, calendars, address books, diaries, note pads, cameras, video players, tape recorders, albums, maps, and web browsers. (*Riley, supra*, 573 U.S. at p. 393.) They can also reveal a person's private interests or concerns and other details of life. (*Id.* at pp. 395-396.) The "apps" on a person's cell phone can disclose his or her medical, political, legal, financial, sexual,

1

religious and other private interests or concerns. (*Ibid.*) They can support sobriety, arrange intimate relationships, and track health condition and care, including menstrual cycles, blood pressure, pregnancy, diabetes, and medications. Because electronic devices can contain and reveal so much information, they now hold " 'the privacies of life.' " (*Id.* at p. 403.)

But the reach of online access is now so extensive and pervasive that the challenged e-search conditions may also permit intrusion into the privacy of those who are not on probation, did not consent to have their private information viewed, and may have no idea their information is being viewed. Modern devices have the capability to determine the location of family members and friends. They can also be used to access the social media postings of others, even when those other individuals have attempted to limit access to their content through appropriate privacy settings. In addition, with the passwords that the e-search conditions require defendant to divulge, defendant's electronic devices may permit access to numerous confidential family member accounts and records. I am unaware of any case holding that when an individual consents to probation, officers may observe the location of the probationer's family members and friends throughout the country, and may also view, without a warrant, confidential family records and account information held by employers, financial institutions, health plans, hospitals, doctors, retirement plans, retailers, schools, media outlets, transportation providers, restaurants and food delivery services, entertainment and streaming businesses, cloud storage providers, associations, and political organizations. Yet all of that information may be available through a single mobile device.

The state certainly has interests in reducing recidivism, apprehending violators of the criminal law, and helping probationers integrate back into the community. It is also true that probationers have reduced privacy interests. Nevertheless, persons on probation subject to search conditions retain some residual expectation of privacy. (*In re Jaime P.*

2

(2006) 40 Cal.4th 128, 136-137; see also *United States v. Lara* (9th Cir. 2016) 815 F.3d 605, 611-612.)

Here, I would conclude the unlimited e-search conditions challenged in this case are overbroad and unreasonable. The interest in controlling future identity theft, while significant, is simply not addressed by search conditions that could be used to review a genealogy report or a child's school records. I understand the concern that if a search authorization is expressly limited, the probationer may move criminal activities to the protected location. But that is a concern with any search limitation, and it is not a sufficient basis under the law to permit unfettered search authorization.

 

 

 

 

                        _____

                        Mauro, J.